Good morning, Your Honors. May it please the Court, Vivian Fu for Petitioner Appellant Carlos Luna. I'd like to reserve two minutes for rebuttal. All right. I will watch the clock. Okay. You know that the time remaining is all the time you have. Yes. Thank you. With the Court's permission, I will start by addressing the California Appeal and Code Section 186.22a claim. As set forth in the supplemental briefing, People v. Rodriguez controls the outcome of this case. The California Supreme Court was very clear that Section 186.22a is meant to punish a defendant's active participation in the gang, in his gang, and that the California legislature included the element of promoting, furthering, or assisting members of that gang specifically to exceed the due process requirement of personal guilt that was articulated in scales. And because the statute specifically refers to, quote, members of that gang, unquote, the common sense plain language reading set forth in Rodriguez that applies to a single gang member is equally valid. Counsel, what do we do if we have a possibility that two gangs or that members of two different gangs are cooperating? Well, there's no possibility in this case. There was no evidence that any of the gangs were related, that there was the gang experts testified that. Is that a judgment we can make on this record? Yes. I believe it is, Your Honor. Because there was no evidence that was presented at trial that linked the gangs. The gang experts themselves testified that there was no alliance between the Monos gang and the Crow Village gang, and there was no rivalry with the victim's gang, the F-Stop gang. So on this record, it may be, you know, it may complicate matters. I can imagine in another case where the gangs were related or there was some shred of evidence that there was some relationship. But in this case, on this record, there is no such evidence. So in this particular case, people v. Rodriguez, I think it's very clear that people v. Rodriguez controlled the outcome of this case. Is your argument the same regarding the enhancement? The enhancement, we also, our position is also that there's insufficient evidence to show that. But not for the same reason. For not so much based on Rodriguez, but based on similarly because the only evidence presented at trial was the gang membership of the three in the Monos gang, the Crow Village gang expert. And basically all he said was, when asked what his opinion was based on, he said, quote, it's based on my training and experience, cases that I've been investigating, people that I've talked to, and based on the information that he had provided. But haven't the California courts accepted that as sufficient to imply the, to apply the enhancement? No, Your Honor. I would disagree with that. People v. Ochoa, the California Supreme Court specifically stated in that case that a gang expert testimony alone is insufficient to find an offense gang-related. The record must provide some evidentiary support other than merely the defendant's record of prior offenses and past gang activities or personal affiliations for finding that the crime was committed for the benefit of, at the direction of, or in association with the criminal. What about in this case? Did the California courts find that it was sufficient in this case? The California courts did, but our position is that that is objectively unreasonable because they based their, there was no evidence other than, there were only two witnesses that testified with respect to the actual crime, and so it was security guards that testified as to their observation of the fight. And then there were two gang experts that testified. So there was nothing on motive, nothing on alliance, nothing on rivalry. This happened in a jail facility, so there's no issue of gang turf. So all the usual sorts of elements that come into play in a gang enhancement are not present in this case. But it wouldn't have to be gang turf, would it? Yes, but there's also no testimony of any sort of jail turf or any sort of. Right. But to enhance the gang's reputation within the jail. Yes. But there's no, there's just no testimony at all, no evidence at all that the two of them, there's no distinguishing this particular fight between any other fight in a jail between two inmates. The only distinguishing factor is that they all happen to be members of different gangs. But there's nothing, there's nothing inherent in these circumstances that could sustain the gang experts' inference that the fight was committed for the benefit of or in association with the Crow Village gang. Perhaps we should hear from the government. Yes, I'll reserve my time. All right. Thank you. May it please the Court. Good morning. I'm Kevin Vienna. I'm a California Deputy Attorney General here for the appellee and respondent in this matter. If I may begin with the gang enhancement, I would disagree that there is no other evidence beyond the gang experts' testimony that this was a gang-motivated crime. The jury heard evidence that both Mr. Huerta and Mr. Luna were long-term active, and I would say hardcore, gang members. I don't think the term hardcore was used, but that was an inference that the jury could draw, in particular based on the nature of the tattoos worn by Mr. Luna and by Mr. Huerta. But you wouldn't argue, would you, that merely being a hardcore gang member is sufficient for the enhancement? Certainly not, Your Honor. But what I would say is that it implies or it provides important background context for the jury to evaluate some other evidence that I'd like to bring to the court. And that is also sort of background and context is the centrality of the gang lifestyle to the members of the gang, reflected both in the way they appear in their tattoos and in the purpose of the gang's existence. That is, well, Mr. Luna's gang, Crow Village, the testimony provided to the jury was that a primary purpose of that gang is to commit the very crime that was committed in this case, attempted murder and murder. And then also having to do with gang culture is the centrality, the essence of violence. Violence is the basis for respect. Respect is the basis for gang individual and gang group power. Counsel, my difficulty with that argument is that that would mean that if you accept the premise that violence is central to the gang life, that any crime that's committed by a gang member could be subject to the enhancement. I don't think that's true. While I believe that lots of crimes, lots of violent crimes committed by gang members would qualify for the enhancement, not every one. Child abuse, for example, is a crime of violence. Domestic violence is a crime of violence. If it's not, if it is personal, and in many ways if it's private, I would say that the state would not be able to show that the enhancement applies to the criminal conduct in that case. Who is the gang member we're focusing on for this purpose? Luna, take it, does not have to be a member of the other gang. That's sort of irrelevant, right? For the enhancement. That is correct. For the enhancement. That's correct. Focusing on the other guy who's attacking another gang person, correct? Yes, Your Honor. Although what I would say is that Mr. Luna is responsible for the gang enhancement both individually, that is if his efforts contribute to, I believe what Judge Rawlinson said earlier, was the enhancement of the gang's reputation in the jail. He's responsible for, or he is, the gang enhancement applies to him on his own. But it would apply to him for assisting a known gang member. So his assistance to Mr. Huerta also would qualify him for the gang enhancement. But finally, next what I would say points to this being, to the jury having evidence that this is a gang-motivated crime, is that, well, there is evidence that Mr. Luna and Mr. Huerta were closely associated. You're not talking about the street terrorism provision. You're talking about A. I'm talking only about the B provision. B1. Rodriguez does not govern B1, is that right? Absolutely not. It does not require cooperation with another member of the same gang. Correct, Your Honor. Okay. And so that enhancement could attach to the attempted murder charge, is that right? Yes, Your Honor. Okay. And then the second charge is the assault with a deadly weapon for the benefit, which is the A charge. The street terrorism charge. No, street terrorism is a third stand-alone crime. I see. And I'm still on B1, if I may. But so we have the gang culture, we have their immersion in the gang culture, the importance of violence, and the jury has been told that violent crime is a purpose of Mr. Luna's gang. Finally, we have the crime itself that also demonstrates the gang motivation for this crime. It is the same type of crime that Crow Village commits. We know that these people knew each other. They were in the same gay group section, went to meals together. Their cells were nearly adjacent. But more so we know from the context of the crime itself. When Mr. Huerta commenced his crime with the sharpened weapon, Luna responded immediately in a way that suggested or the jury reasonably could infer a preplanned, coordinated attack. Other evidence that this was preplanned and coordinated was that at the conclusion of the attack, after approximately five minutes, Mr. Huerta throws away the weapon that he'd used in the attack, Mr. Garcia, and his cellmate, Mr. Gonzalez, immediately picks it up and immediately disposes of it by flushing down the toilet. So the context of the crime itself is that this is coordinated action. And finally, what I would say is the nature of the crime shows that this is gang motivated, is that it occurs publicly. It occurs in a circumstance where they are nearly certain to be caught. So from that, the jury could infer that they were concerned not just about injuring the victim, but also about doing it publicly so as to send a message of the violent nature of this gang and the respect to which it's entitled. And then finally, we have the gang expert's testimony. Relying on the totality of the circumstances, he says, in response to a hypothetical question, this is the type of crime that is committed, and it appears to me to have been committed for the benefit of Mr. Luna's gang. B-1 requires specific intent. It does, Your Honor. Do you have evidence of the specific intent? California has said that the specific – well, has said, as a matter of common sense, that specific intent may be inferred from gang members acting in concert. And we had two long-term obvious gang members acting in concert. So I think that – and similarly, if the crime was for the benefit, if Mr. Luna committed this crime for the benefit, he had the specific intent. That is, he's a solid gang member. He knows what he's doing. This is not accidental behavior on his part. Finally, I would simply point one more thing out. With regard to federal review, we don't get to – or the Court does not look at the quality of the evidence. And Ms. Fu, who has ably briefed and argued this case, invites the Court to look at the quality of the evidence, suggesting that the gang expert's testimony is not enough. But under McDaniel v. Brown, just recently in 2010, 558 U.S. 120 cited in our brief, it's quite clear that the evidence need not be terribly good. In fact, it need not even be admissible. If it is before the jury and it supports their determination, that's sufficient to meet Jackson analysis. With regard – if I could turn briefly to the substantive crime of street terrorism, I have admitted, I think, in our supplemental brief, that Rodriguez provides substantial support for Mr. Luna's claim. But we think it's not quite clear. And as Judge Bybee asked, what about the circumstance where we have two members who are of different individual gangs combining to engage in the same crime? And there is some evidence of that, or I believe there's evidence of that, from the very evidence of the crime itself. But I would add that there is some evidence in the record that suggests that gang members from different gangs ally themselves when in jail. That evidence – and I'm not going to – I won't say that it's terribly strong, but it's present. Your proposed solution is to – is for us to send this back to the district court and then allow the district court to let Mr. Luna exhaust whatever remedies he has in California State court. What's the procedure for that? I'm not sure I follow the procedure. At the end of my supplemental brief, I referred to it. I think there are two. Two ways he can do it. One is he could do it by asking the court of appeal to recall the remediator based on the change of law in Rodriguez. And I cited an unpublished case that said that that's appropriate and relief has been granted. Alternatively, I think he can bring an independent due process claim in habeas corpus based on a case pointed out by this court, that says that if a state court determines that the conduct for which the individual was convicted never was a crime, then due process requires that that person be released. Okay. How do you – just walk me through the mechanics. If we remand this to the district court, how does the district court get this back in front of the state court? The district court simply stays action, stays further action on it. And Mr. Luna, based on what we've discussed here, based on my brief, based on what Ms. Fu can tell him, can simply file a habeas corpus petition at any level of the California courts, citing Fiori, citing Rodriguez, indicating quite clearly that it was – Wait a minute. So it means we ignore what the California Supreme Court explicitly said, correct? That's what you're saying? No, Your Honor. Well, the California Supreme Court specifically said to satisfy the third element, a defendant, not this defendant, any defendant, must willfully advance and courage contribute to help the members of his gang commit a felony. That's it. There must be at least two gang members. I don't see how you get around that, why a federal court sitting in habeas would say, oh, well, maybe the court will do something different in the future. I believe, Your Honor, certainly there is strong support in the language of the California Supreme Court and the statute that it has to be members of the very same gang. We're not sure exactly how big that is. That is Judge Bybee's question about whether two gangs can combine to become one. That's a question that's not resolved by the federal court. We don't have to resolve that question to resolve this case, do we? I think you do. I think, no, you don't need to resolve it. But state law needs to answer that question. Maybe in a different case, but in this case? In this case, the evidence that there's evidence, first of all, that Mr. Luna had allegiance not just to Crow Village but to the larger, what's described in the record is the larger Southern California Hispanic gang culture. That evidence is that his ---- Well, that's a pretty broad ---- That looks like you just drove a truck through the California Supreme Court's decision in Rodriguez. If that's all you have to have is just a part of a broader gang culture, then anybody, any two members of any two Latin gangs in California that do something together will satisfy the street terrorism provision. I think that's possible, Your Honor. I'm not sure that that ---- If we were to ---- let me ask a slightly different question. Your argument that you're making now is that there's sufficient evidence in the record for us to find that there would ---- Your argument is that there's sufficient evidence for us to conclude that these two guys were acting in concert, their gangs were acting in concert. Now, if we were to do as you requested and send this back to the district court, allow the district court to exhaust state remedies, would you be able to reopen the record in state court? No. I don't think we could try the case more. We couldn't present additional evidence. Whatever is in the record now is all the record that anybody is going to get. I think that's correct, Your Honor. Okay. So what's the evidence that these two gangs were acting together? Well, the evidence for me is ---- It's just a broad principle, counsel. That's a huge, huge leap. Well, beyond Mr. Luna's tattoos that show 13, that is MA, a specific southern Hispanic gang, and his other tattoos, but there's also the evidence in the record at Excerpt of Record 273 that gang dynamics, gang allegiances change over time. That is so the absence of prior evidence of connection doesn't mean that it hasn't established by then. And then finally, and there's only this one point, it's at Excerpt of Record, page 129, it says that Hispanic gangs put aside rivalries and work together when they're in prison. And that's all there is. That is all there is. Those are the points I hope to cover. If there are no further questions from the court. Thank you, counsel. Rebuttal. I first want to address counsel's point with respect to remanding to the district court and having Mr. Luna raise a State habeas petition. First of all, Respondent raised exhaustion as an issue for the first time in the supplemental letter brief, and that was the ---- that was never raised in his answering brief. In fact, he never responded to the people who brought Rodriguez's issue in the answering brief at all. So ---- It's kind of awkward procedurally because the government is positing a remand based on actions that it's saying that the defendant would take in State court. That's kind of awkward procedurally. We would suggest if the panel actually ---- if the panel believes that the question is still an open one after Rodriguez, we would suggest certifying the question to the California Supreme Court with respect to this particular case, whether Mr. Luna's commission of a felony as the sole Crow Village gang member can result in a 186.22a conviction. And there is ---- this Court has done that previously where ---- Well, if we did that, counsel, though, we'd have to tell the Supreme Court that it would control this case or may control this case, and that seems fairly remote. Well, we ---- our position is that People v. Rodriguez does control this case, so that there would be no need to remand to the district court or request certification because we believe the panel can decide based on this record and based on People v. Rodriguez that there is insufficient evidence to convict Mr. Luna of 186. But your preference would be if the Court were inclined to do one or the other. If the Court is inclined to remand to the district court, we believe that procedurally that doesn't actually work, because it would require Mr. Luna to proceed pro se in the district court and before the state court to file a habeas petition on his own, which realistically isn't going to work out that well. Whereas the precedent this Court has previously in Emory v. Clark and Doe v. Harris and Schaefer v. Prosper has certified questions where it thought that there was no controlling state court law. Does Rodriguez have any impact on your sentence enhancement? The sentence of Mr. Luna? The sentencing enhancement. No. The v. 1 issue. No, I don't believe so. It applies to 186.22a primarily. With respect to 186.22b, I wanted to respond to a few things that counsel said. With respect to the fact that the attack took place in a public setting. I mean, this is a jail. There's no way for it to take place in a nonpublic setting. There's no way. There are private parts of jails, though. I mean, we get cases where people are attacked within their cell, in a shower area, or other places that are not as public as right on the tier. Yes, that's possible. But they would still, I mean, there is security everywhere in a jail, and at some point people would know about it and they would get caught. With respect to the fact that it's coordinated action, just because it's planned doesn't mean that it's gang related. I mean, non-gang members also plan attacks. But hasn't these arguments already been presented to the jury? We had gang experts who came in and testified contrary. So what's the problem? Well, the gang expert didn't testify. The gang experts simply testified that because there was a culture of violence and because respect is important to the gang, therefore it was the gang expert's opinion that this particular crime was gang related. But our position is that that is not enough, even based on state court cases, such as people, V. L. Cholla and N. Ray Daniel, which are cited in the briefs. But the California courts disagreed with you on that point. Yes. But we believe that they were objectively unreasonable on that. And we're supposed to find that they were objectively unreasonable based on their own law? Well, this Court, I mean, sitting in federal habeas, it doesn't mean, deference doesn't mean abdication. But do we have anything other than Jackson v. Virginia that would guide us on that question? Jackson v. Virginia, N. Ray Winship, I mean, Jackson v. Virginia. But those are very, very broad principles. Yes. You're really asking us to tell the California courts they didn't know what they were talking about when they affirmed this, that portion of the sentence. Yes. But broad principles are the basis of federal habeas relief. But when a state court interprets its own statutes, that's the height of deference to state court rulings, isn't it? But that would preclude all insufficiency of evidence claims on federal habeas, because the state court is always interpreting its own. Very rare. But it does happen. And I think this case is one of the rare cases where there is virtually no evidence – I mean, the only evidence is the guard saying these guys got into a fight, this guy had a shank. I mean, Luna was not the one who was holding the shank. It was Herta. And there's just nothing to distinguish this attack from any other attack between, you know, two or three inmates that happened in a jail. And that can't be enough under Jacksonville, Virginia. All right, counsel. Thank you. Thank you to both counsel for your argument. The case just argued is submitted for decision by the Court. Thank you.
judges: Fernandez, Rawlinson, Bybee